The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>ROBEL KELETA GOITOM,<br><br>Defendant. | NO. CR24-040 RSL<br><br>GOVERNMENT'S OPPOSITION TO GOITOM'S MOTION TO SUPPRRESS |

## I. INTRODUCTION

Robel Goitom's firearm was lawfully recovered from his car under the automobile exception to the Fourth Amendment's warrant requirement. The firearm was also lawfully found during a search of the car incident to Goitom's arrest on suspicion of driving under the influence of intoxicants. And even if those two exceptions to the warrant requirement did not apply here, the officers actually obtained a search warrant, and that warrant was supported by probable cause to believe that Goitom unlawfully possessed a firearm and was driving under the influence of intoxicants. Finally, the firearm would have inevitably been discovered during an inventory search of Goitom's car. Each of these conclusions independently supports the admissibility of Goitom's unlawful firearm, and his motion to suppress should be denied.

Government's Response to Goitom's Motion to Suppress - 1
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II. STATEMENT OF THE FACTS

At about 2:00 a.m. on a morning in October 2023, SPD Officers French and Lentz were in a patrol car on a stretch of Aurora Avenue in Seattle known for prostitution. They saw a Jeep creeping in reverse on the sidewalk. Exhibit A, Officer French's In Car Video 00:50–01:10. The driver, Goitom, was using his car to harass a woman dressed in revealing clothing and high heels. *Id.* When the officers pulled behind Goitom's car and activated their emergency lights, the woman quickly walked away. *Id.* Officer French got out of the patrol car and approached Goitom's car. As he did so, Officer French saw Goitom placing a gun in the center console. The two officers then ordered Goitom to get out of his car. Exhibit C, Officer Lentz's Body Worn Video at 00:00. When Goitom got out, Officer French asked Goitom about what he placed in the center console:

| | |
|---|---|
| **Officer French:** | "Do you have any weapons on you?" |
| **Goitom:** | "Nope." |
| **Officer French:** | "What were you hiding in the center console of the car when we pulled up?" |
| **Goitom:** | "Nothing" |
| **Officer French:** | "I saw you put something in there, what was it?" |
| **Goitom:** | "What do you mean, I did not hide nothing in my center console." |
| **Officer French:** | "I saw you do it." |

Exhibit C, Officer Lentz's Body Worn Video at 00:13.

The officers moved Goitom from his vehicle to the front of their patrol car. They then asked Goitom why he was driving on the sidewalk. Goitom replied that he was trying to turn around and thought the sidewalk was a median. *Id.* at 00:36. Officers responded that

Government's Response to Goitom's Motion to Suppress - 2
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  he was on the sidewalk, not a median. They smelled a strong odor of alcohol on Goitom's
2  breath and noted that he had slurred, slow, and mumbled speech. They also saw that
3  Goitom's eyes were glossy and bloodshot, and his eyelids were droopy. Exhibit B, Officer
4  French's Body Worn Video at 01:00–-1:58, 16:05.

5      When the officers asked Goitom about his red eyes, he told them his eyes were red
6  because he was allergic to his own cologne. Exhibit C, Officer Lentz's Body Worn Video
7  at 1:10–1:34. The officers returned to Goitom's car and saw a bottle of alcohol on the front
8  passenger floor and a cup in the cupholder. *Id.* at 1:35–2:52. Given all the factors
9  suggesting that Goitom was intoxicated, the officers believed the open cup contained
10 alcohol. When asked about these items, Goitom said that the cup was filled with Gatorade
11 and denied drinking the bottle of alcohol on the passenger side floor. *Id.* at 03:29–3:52.

12     Officer French ran a criminal history check and learned that Goitom was a felon on
13 federal probation. At this point, Officer French walked back to Goitom's car, shined his
14 flashlight on the center console, then returned to Goitom and asked if he would take field
15 sobriety tests. Goitom declined. Exhibit B, Officer French's Body Worn Video at 3:00–
16 5:55. Officers then told Goitom that he was under arrest for DUI.

17 //
18 //
19 //

Government's Response to Goitom's Motion to Suppress - 3
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Officer French returned to Goitom's vehicle, announcing that he was "going to do
2    an inventory search." Exhibit B, Officer French's Body Worn Video Iat 10:30. He opened
3    the center console and found a firearm there.



Officer French then stopped the inventory search and applied for a warrant to search the car for the DUI and firearm possession. Dkt. 39 at 15–19.

During transport, Officer French told Goitom that he was under arrest for DUI and for unlawful possession of a firearm. Officer French stated: "I saw you put [the gun] in the

center console" and that he was going to seek a warrant for Goitom's car and blood. Exhibit B, Officer French's Body Worn Video at 16:00.

Goitom asked Officer French what the probable cause was. Officer French told Goitom: "You smell like alcohol, speech is stutter, slow and mumbled, your eyes are glossy, watery bloodshot, your eyelids are droopy…pretty good right there…alcohol in your car." *Id.* at 16:05. Goitom then stated: "where does the firearm come into play?" *Id.* at 16:19. Officer French reiterated that he saw Goitom "put it in the center console" when he walked up to his car. *Id.* The two continued discussing the firearm:

| | | |
|---|---|---|
| **Goitom:** | "I did not put no firearm in my center console." |
| **Officer French:** | "Okay." |
| **Goitom:** | "So, is that, are you assuming?" |
| **Officer French:** | "No, I saw it." |
| **Goitom:** | "You're assuming." |
| **Officer French:** | "No I saw it." |
| **Goitom:** | "Man you're assuming, you are assuming I put something in my center console." |
| **Officer French:** | "No, I saw you do it." |

Exhibit B, Officer French's Body Worn Video at 16:25–16:49.

//
//
//

Government's Response to Goitom's Motion to Suppress - 5
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  The vehicle was towed to the SPD north precinct and later searched pursuant to a
2  warrant. The search recovered a Glock 19 9mm semi-automatic gun with a round in the
3  chamber, an extended 30 round magazine next to the firearm, and cash.



### III.     ARGUMENT

**A.    The warrantless search of Goitom's center console was valid under the automobile exception to the warrant requirement.**

"Under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime." *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010); *see also United States v. Ross*, 456 U.S. 798, 799 (1982) *(citing Carroll v. United States*, 267 U.S. 132 (1925)). The search may extend to any part of the vehicle and any

Government's Response to Goitom's Motion to Suppress - 6
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

containers or packages that might contain evidence of that particular crime. *United States v. Ross*, 456 U.S. 798, 821–24. (1982).

"Probable cause is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quotation marks omitted). "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (internal quotation marks omitted); *see also United States v. Faagai,* 869 F.3d 1145, 1150 (9th Cir. 2017) ("Probable cause exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place." (internal quotation marks omitted)).

Courts evaluate probable cause "from the standpoint of an objectively reasonable police officer," taking into account the "totality of the circumstances" leading up to the search of defendant's car. *Wesby*, 583 U.S. at 60. The Court may not view facts "in isolation" or engage in a "divide-and-conquer analysis." *Id.* at 61. Nor may the Court "dismiss outright any circumstances that were susceptible of innocent explanation." *Id.* Nor may the Court ignore factors supporting probable cause. The analysis of probable cause must consider "the whole picture." *Id.* at 61.

Here, Officer French had probable cause to search Goitom's car for evidence of DUI. Before he searched, a constellation of facts gave Officer French probable cause to believe that Goitom drove while under the influence of alcohol or drugs and that his car would contain evidence of that offense. Officer French saw Goitom driving on the sidewalk. Exhibit A, Officer French's In Car Video at 00:50–01:10. When questioned about his driving, Goitom denied that he drove on the sidewalk and claimed he had been trying to turn around and ended up on a median; his violation of the traffic code and his confusion between a sidewalk and a median both supported suspicion that he was intoxicated. The smell of alcohol on Goitom, his slow, slurred, and mumbled speech, and his bloodshot, droopy, and watery eyes also contributed to that suspicion, as did his claim that his eyes were bloodshot because he was allergic to his own cologne. On top of this

Government's Response to Goitom's Motion to Suppress - 7
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  constellation of evidence, Officer French also saw a bottle of liquor on Goitom's passenger
2  floorboard and a cup of liquid in Goitom's cupholder. And Goitom refused field sobriety
3  tests. These factors easily gave rise to a suspicion that Goitom violated RCW 46.61.502,
4  Washington's prohibition on driving under the influence. *United States v. Jones*, 2024 WL
5  4456194, at *4 (2d Cir. Oct. 10, 2024) (search came within automobile exception based on
6  probable cause to believe suspect drove while intoxicated, factors establishing probable
7  cause included open container of brown liquid in plain view in car, suspect's glassy eyes,
8  slurred speech, and odor of alcohol, and suspect's failing a field sobriety tests and
9  providing breath sample over the legal limit for blood alcohol level); *United States v. Tran*,
10 2024 WL 885135, at *2 (9th Cir. Mar. 1, 2024) (collecting cases on DUI probable cause
11 and finding probable cause for California marijuana DUI based on smell of burnt
12 marijuana, admission that defendant had marijuana in his backpack, membership in a gang
13 involved in drug trafficking, and green leafy substance in defendant's pockets).

14       Officer French also had probable cause to search Goitom's car for evidence that he
15 possessed a firearm as a prohibited person. Officer French saw Goitom place a firearm
16 inside his center console as Officer French approached the vehicle. Moments later, Officer
17 French learned that Goitom had a felony conviction, which meant that he was prohibited
18 from possessing a firearm. Taken together, these facts gave Officer French probable cause
19 to believe that Goitom possessed a firearm in violation of both state and federal law.

20       Taking all of that evidence in combination and viewing it from the standpoint of a
21 reasonable officer, there was a fair probability or substantial chance that a search of
22 Goitom's car would reveal evidence of DUI and evidence that Goitom unlawfully
23 possessed a firearm. *Wesby*, 583 U.S. at 57; *Faagai*, 869 F.3d at 1150. The car could
24 contain, among other things, containers of alcohol or other intoxicants that evinced the DUI
25 offense, or the firearm that French saw Goitom put into the center console. Since Officer
26 French had probable cause to believe the car contained evidence of two crimes, his search
27

Government's Response to Goitom's Motion to Suppress - 8  
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

of the car including the center console that contained the firearm was lawful under the automobile exception.

Goitom's motion to suppress focuses on Officer French's announcement that he was going to conduct an inventory search just before he found the firearm, arguing that the firearm should be suppressed because French did not finish searching the car or prepare an inventory sheet and open the console in violation of SPD's inventory-search policy. But it makes no difference under the automobile exception that Officer French announced that he would conduct an inventory search just before he found the firearm in the center console. A police officer's subjective reasons for a search do not control the legal justification for his actions, as long as objective circumstances justify the search. *Scott v. United States*, 436 U.S. 128, 136 (1978); *see also Whren v. United States*, 517 U.S. 806, 813 (1996). Instead, the question is whether the objective facts justified Officer French in searching the car under an applicable exception to the warrant requirement. Here, the facts justified an automobile search, and Goitom's challenge to an inventory search is beside the point.

It also makes no difference that the officers stopped searching the car once they found the firearm and decided to apply for a search warrant. The officers could legally have searched the vehicle more fully at the scene; the authority to conduct a warrantless search under the automobile exception does "not evanesce simply because the officers decided to impound the car and search it later." *United States v. Henderson*, 241 F.3d 638, 649 (9th Cir. 2000); *see also United States v. Noster*, 590 F.3d 624, 634 (9th Cir. 2009) ("[T]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure.") (quoting *United States v. Johns*, 469 U.S. 478, 484 (1985)).

The search that revealed the firearm was lawful under the automobile exception. Goitom's motion should be denied.

**B.    The firearm was found during a lawful search incident to arrest**

Government's Response to Goitom's Motion to Suppress - 9
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Goitom was lawfully arrested based on probable cause to suspect that he drove while intoxicated and probable cause to believe that he possessed a firearm as a prohibited person. In light of his arrest, the officers had authority to search his car so long as it was reasonable for them to believe that evidence of one or both of those offenses would be found there. This point is fatal to Goitom's suppression motion; while Goitom's arguments, if accepted, might undermine probable cause for the firearms arrest, Goitom makes no challenge to his DUI arrest. And that arrest, by itself, justified a search of the car for evidence of DUI.

After an arrest, an officer may search the person who is arrested and his surrounding area, including nearby bags or belongings. *United States v. Smith*, 389 F.3d 944, 950-51 (9th Cir. 2004) (per curiam); *United States v. Cook*, 808 F.3d 1195, 1199–1201 (9th Cir. 2015). This exception also permits the search of a vehicle if the person is arrested during a traffic stop so long as it is reasonable to believe that the vehicle may contain evidence of the offense of arrest. *Arizona v. Gant*, 556 U.S. 332, 351 (2009).

*Gant*'s exception to the warrant requirement is different from the automobile exception. *Gant*, 556 U.S. at 347 (distinguishing the doctrines); *United States v. McCoy*, 2021 WL 4739645, at *1 (9th Cir. Oct. 12, 2021) (treating search incident to arrest and automobile exception as distinct exceptions to the Fourth Amendment); *United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010) ("Presumably, the 'reasonable to believe' standard requires less than probable cause, because otherwise *Gant*'s evidentiary rationale would merely duplicate the 'automobile exception,' which the Court specifically identified as a distinct exception to the warrant requirement."). The automobile exception allows police officers to search a vehicle for evidence of any crime, not just the crime of arrest, but allows a search only on a showing of probable cause. *Gant*'s search-incident-to-arrest exception, in contrast, allows a search on "reasonable belief" that evidence of the crime of arrest will be found in the car, but to satisfy that standard, that crime must be one for which evidence might be found in a car.

Government's Response to Goitom's Motion to Suppress - 10
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It was reasonable for the officers who arrested Goitom on suspicion of DUI and unlawful possession of a firearm to believe that evidence of both offenses would be found in his car. Open or empty containers of alcohol, packets of other intoxicants, or receipts from a bar or liquor store might evince intoxication. And a firearm may be stashed under a seat, or in a glove box or center console. Under *Gant*, the officers could accordingly search Goitom's car for that evidence incident to his arrest. Goitom's suppression motion thus must be denied.

**C.    The firearm was found during a lawful, warranted search**

Officer French applied for and obtained a warrant to search Goitom's car for evidence that he possessed a firearm. Dkt. 39 at 15–17. The warranted search comported with the Fourth Amendment.

A warrant must be supported by probable cause, which is a fair probability that contraband or evidence will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As probable cause to believe that the car contained a firearm, French attested that when he got out of the patrol car and approached Goitom's car, he saw "the driver put a firearm in the center console" and that an ensuing criminal history check "showed Goitom is a convicted felon and on federal probation." Dkt. 39 at 18–19.

These facts establish a fair probability that Goitom's car would contain evidence that he possessed a firearm. While Goitom contends in his motion for a *Franks* hearing that French's statement that he saw Goitom put a gun into the center console is unsupported by the record (Dkt. 39), that contention lacks merit (as explained in the government's opposition), and Goitom does not separately argue that the warrant affidavit fails to establish probable cause even if Officer French's statement is accepted. The search warrant that issued was thus valid.

The search warrant also validly authorized the officers to search the car for evidence of DUI. The affidavit sets out facts establishing probable cause to believe that Goitom

Government's Response to Goitom's Motion to Suppress - 11
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

drove under the influence of alcohol, including his driving on the sidewalk, his near striking of a pedestrian, his confusion between the sidewalk and a median, his odor of alcohol, his slurred, slow, and mumbled speech, his bloodshot, glossy, and droopy eyes, and his refusal to take a field sobriety test. Dkt. 39 at 18–19.  And because evidence of DUI including cups, bottles, or receipts might be found in the car, the warranted validly authorized a search of the car for that evidence. Dkt. 39 at 16 (authorizing search for "alcoholic beverage containers").

But even if this court were to conclude that the warrant did not set out probable cause to search the car for evidence of unlawful possession of a firearm and DUI, the good-faith exception would apply. Searches conducted pursuant to a warrant are generally reasonable. *United States v. Leon*, 468 U.S. 897, 922 (1984). The good-faith exception permits the admission of evidence when the police act with an objectively reasonable good-faith belief that their conduct is lawful. *Davis v. United States*, 564 U.S. 229, 238–39 (2011). This exception recognizes that the high cost of suppression is not warranted when the police act in good faith or their conduct is merely negligent. *Id.* at 238–39.

When, as here, an officer relies on a search warrant in good faith, then it is generally irrelevant if a court later determines that the warrant was invalid. *Leon*, 468 U.S. at 922–24. The officers who searched Goitom's car under the warrant had no reason to doubt the warrant's validity. Suppression would thus be unwarranted even if this Court were to conclude that the warrant was invalid.

**D.     The discovery of Goitom's firearm was inevitable**

Police may conduct an inventory search if a car is lawfully impounded following an arrest. *South Dakota v. Opperman*, 428 U.S. 364, 369–71 (1976). Here, officers impounded Goitom's car shortly after his arrest and towed it to a police yard. Once the car was impounded, it was inevitable that the firearm in it would be discovered. SPD policy

Government's Response to Goitom's Motion to Suppress - 12
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

instructs officers to "inventory the contents of all vehicles to be impounded and all personal property for safekeeping." Dkt. 40 at 15.

The inevitable-discovery doctrine allows evidence obtained outside the Fourth Amendment to be admitted in court if the evidence would have been eventually discovered by lawful means. As the Supreme Court explained in *Nix v. Williams*, 467 U.S. 431, 432 (1984), "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received."

Whether "historical facts" establish that lawful discovery of the evidence was inevitable is a case-specific inquiry. *United States v. Ruckes*, 586 F.3d 713, 719 (9th Cir. 2009). *Ruckes* sets out the required analysis. There, a state trooper discovered that the defendant was driving without a valid license and then illegally searched the vehicle. *Id.* at 715–16, 718. Before the search, the trooper explained that the vehicle would be impounded if no one was available to pick it up. *Id.* at 716. Although the trooper had some discretion on whether to impound the vehicle, the record established that impoundment was "standard procedure" because no one was available to pick up the defendant's vehicle. *Id.* at 719. The Ninth Circuit thus concluded that an inventory search, which would have uncovered the evidence sought to be suppressed, was inevitable. *Id.*; *see also Andrade*, 784 F.2d at 1433 (holding the inevitable-discovery exception applied where "routine booking procedure and inventory would have inevitably resulted in discovery of the cocaine").

The discovery of Goitom's firearm was inevitable because his vehicle was partly on a sidewalk when he was arrested and could not be left where it was. Under SPD policy, that means that officers would inevitably have impounded Goitom's car (as they did) and would inevitably have conducted a routine inventory search if they had not obtained a search warrant instead. Dkt. 40 at 15. SPD's routine procedures make clear that an inventory search "would have necessarily followed" if Officer French had not sought a

Government's Response to Goitom's Motion to Suppress - 13  
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

search warrant, which means the firearm would inevitably have been discovered. Dkt. 40 at 15.

Goitom argues that an inventory search would not have revealed the firearm because SPD's policy prohibits searched closed containers within a car. But the policy contains an exception to this limitation; it provides that **"Officers may inventory closed containers or the trunk if there is a reasonable belief that items inside may pose a danger to the officer or police facility. Officers must be able to articulate supporting facts."** Dkt. 40 at 16. Even assuming for the sake of argument that Officer French did not know what Goitom put into the center console, Officer French had reason to believe that it could pose a danger to officers or the police facility because it was something Goitom was trying to hide. Also, Goitom did not just secretly place something in the center console as Officer French approached the car, he also denied doing so when Officer French asked him about it. Those facts support searching the console for a dangerous item.

### IV.     CONCLUSION

The Court should deny Goitom's motion to suppress.

Dated this 6th day of February 2025

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*s/ Erika J. Evans*
ERIKA J. EVANS
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: 206-553-7970
Email: Erika.Evans@usdoj.gov

Government's Response to Goitom's Motion to Suppress - 14
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*I hereby certify that this pleading contains 3,778 words, in compliance with the Local Criminal Rules.*

Government's Response to Goitom's Motion to Suppress - 15
*United States v. Goitom*, CR24-040 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970